YOUNG v. LINCK.

1. Specific Performance—Lease—Care and Support—Acquiescence.

In son's suit for specific performance of written lease agreement whereby upon father's death the administrator of his estate was to convey 40-acre farm to plaintiff in return for plaintiff's agreement to move on farm, care for aged parents, pay $100 rent per year, pay taxes and keep the property in good repair, plaintiff *held*, not entitled to deed where he was either evicted or moved off pursuant to notice to quit and thereafter failed to tender performance or make payments for eight or nine years prior to father's death and apparently acquiesced in father's treating agreement at an end.

2. APPEAL AND ERROR—EQUITY—QUESTIONS REVIEWABLE—SPECIFIC
   PERFORMANCE.

   Determination of whether or not a father's written agreement
   that administrator of his estate should convey farm to his son
   was a testamentary disposition *held,* unnecessary where it was
   inequitable, under the circumstances, for the son to have specific
   performance of agreement of otherwise intestate father.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted April 8, 1938. (Docket No. 62, Calendar
No. 39,865.) Decided June 6, 1938.

Bill by James Young against S. J. Linck, as ad-
ministrator of the estate of Thomas Young, de-
ceased, and others to obtain specific performance of
an agreement to convey land. Decree for plaintiff.
Defendants appeal. Reversed.

*McCobb & Heaney,* for plaintiff.

*Sharkoff, Wierengo & Clink,* for defendants.

WIEST, C. J. In November, 1922, plaintiff's father
and mother, owners of a 40-acre farm in Muskegon
county, were aged and, needing some one to care for
them, entered into a lease agreement under which
the parents leased the farm to him for a term of
40 years, upon his agreement to pay them, as rent,
$100 per year, pay all taxes, care for and support
them during their lives, and keep the property in
good repair. The writing also provided:

"It is hereby expressly stipulated that at the
death of the said Thomas Young, the administrator
of his estate shall grant a deed of the premises here-
in described to the same James Young, without cost
except necessary fees."

The mother died and plaintiff and his father executed a like lease and agreement in 1924. Plaintiff moved to the premises in 1922, and made some improvements. In 1927, there was some trouble between the parties, and we quote plaintiff's version and result thereof:

"The circumstances under which I left the premises were, we had a little trouble through the oil lease. It was leased and I didn't want it leased. Father told me that it wasn't his fault. He wouldn't say who it was. He wanted it leased, and I figured we could make a little better and, I don't know, anyway, the first thing I knew I got a court order noticing me to vacate. Mr. Bradford served that. Thomas Young was the plaintiff in that action, it said at the bottom. It was written, as I remember, Thomas Young, and I don't think my father ever signed his name. Usually he made a mark. That was served upon me. After that I stayed there. I consulted Mr. Smedley about it. That was about what to do under the circumstances. I stayed until in the fall and I moved. * * * I moved off in accordance with the writ. * * *

"All the time after I moved off, I regarded this contract as being in force. That was in accordance with advice I received. * * *

"I never did have violent words with my father. That was not the sole question between us at the time I left. I left the place because I got an order to move. As far as I was concerned, I know of no other reason why he had me put off there other than because of this lease. I was ejected from the farm after I received the paper. * * * I figured at that time, well, I thought he had a life lease, why, he was my dad and everything, and I came down and asked Mr. Smedley, I think that is his name, and he said I should do as father wants during his life.

"When I went to Mr. Smedley I had no document to show him. * * *

"I didn't talk it over with my father at all, just asked him why he had me put off and he said it wasn't his fault. I did not talk with him relative to my rights under the lease. I figured if he wanted it, it was his. I did not have any conversation with him at all relative to my rights under this lease from the time I received the ejectment notice down to the time of his death."

After plaintiff left the place in 1927, he never paid the taxes, did not support his father, did not pay him any money, or even offer to do so. The father, after plaintiff left the place, rented fields out to others and lived at times with other of his children. In February, 1936, the father died, intestate, leaving several children. November 18, 1936, plaintiff filed the bill herein against the administrator of the estate and heirs at law to obtain specific performance of the lease agreement by administrator's deed.

The circuit judge found that plaintiff had fully performed the lease agreement, paid the amounts required and thereby fulfilled the duties, except insofar as he was prevented from doing so by the acts of his father, and decreed that the administrator forthwith make, execute and deliver to plaintiff a good and sufficient deed.

Defendants, by appeal, contend that the lease agreement for a deed by the administrator was testamentary in character; that the court was in error in holding plaintiff was evicted without cause and in granting relief in face of nonperformance by plaintiff.

The testimony, relative to the eviction, whether a notice to quit or a writ of restitution in a summary proceeding, is indefinite.

A deputy sheriff testified that in 1927.:

"I was given a writ to serve upon Mr. James Young. * * * As near as I can remember it was

a writ to quit. It was a circuit court commissioner's summons. What it was actually I could not say. * * * I definitely remember that I served a writ for eviction on Mr. Young at that time."

Plaintiff testified:

"This eviction case that was started against me by my father, I did not appear in. I cannot tell you what it was I was served with."

If it was a summary proceeding, with writ of restitution then plaintiff cannot now have specific performance. If it was a notice to quit and plaintiff, without demur, claim of right to remain, and tender of performance, moved away and thereafter utterly failed, for nearly nine years his father thereafter lived, to perform or offer to perform any part of the contract, or ever made claim of any rights thereunder, then he cannot have specific performance.

Plaintiff's undisclosed intention to await his father's death before asserting continuing rights under the agreement, accompanied by his failure ever to tender performance and his acquiescence in the acts of the father in treating the agreement as at an end, bars him from now exacting specific performance.

Consideration of all the facts and circumstances leads to the conclusion that a court of equity, in the exercise of sound discretion, should not grant specific performance in this instance and, therefore, we need not determine whether the agreement for the deed was testamentary.

The decree entered in the circuit court is reversed and the bill dismissed, with costs to defendants.

Butzel, Bushnell, Sharpe, Potter, Chandler, North, and McAllister, JJ., concurred.